# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY FUNES, as parent and next friend of C.F., a minor, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | 21 C 5298 |
| THE GARDNER CONSOLIDATED SCHOOL DISTRICT 72C; THE BOARD OF EDUCATION OF THE GARDNER CONSOLIDATED SCHOOL DISTRICT 72C; DR. MICHAEL J. MERRIT, in his Official and Individual Capacity; and AUSTIN MCDOWELL, in his Official and Individual Capacity, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants Defendants' Motion.

## BACKGROUND

The following facts come from the Complaint and are assumed true for the purpose of this Motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Plaintiff's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

C.F. is a student at a school within the Gardner Consolidated School District 72C (the "District"). Prior to entering the seventh grade in the Fall of 2020, C.F. was diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD") and placed on a 504 Plan. Beginning in January 2021, C.F. fell victim to a campaign of bullying and harassment by another student in her class, M.K. The harassment primarily took place in gym class, where M.K. would pull C.F.'s hair, strike her, and call her derogatory names such as "bi**h", "wh**e", and "*as****e", on an almosts daily basis. M.K. openly bullied C.F. in full view of the athletic director, Defendant McDowell, and a teacher's aide, yet neither McDowell nor the aide made any attempt to stop the harassment. The school principal and District Superintendent, Defendant Merritt, was also made aware of the bullying in March 2021 and promised "to look into the matter." But the bullying continued, ultimately culminating in an attack where C.F. was seriously injured.

On May 13, 2021, C.F. and the other students in gym class were tasked with running laps. Part of the path was out of the teacher's sight. While running along this portion of the path, M.K. ran up behind C.F., placed her foot in between C.F.'s legs, kicked out C.F.'s left leg, and slammed her chest into C.F.'s back, causing C.F. to fall flat on her face into hard concrete. C.F. had multiple bruises, cuts, scratches, and scrapes on her face, blood running down her cheek, forehead, and nose, swelling of her face, and a chipped front tooth. A teacher's aide helped C.F. back into the school, where

C.F.'s math teacher then helped C.F. wash the blood off her face and brought her to the principal's office.

Plaintiff was contacted and told C.F. had "collided" with another student and had "some scratches on her face." Plaintiff was able to see the extent of C.F.'s injuries through video chat and went to the school to pick her up. At the school, Plaintiff found C.F. sitting alone in the hallway, still bleeding. Defendant Merritt told Plaintiff he was not going to involve the police or call an ambulance, but that she was welcome to do so herself. Plaintiff then took C.F. to the hospital to receive treatment for her injuries.

C.F. suffered significant emotional trauma in addition to her physical injuries. Following the months of bullying, C.F. was diagnosed with acute stress syndrome and anxiety. She suffers from nightmares, severe anxiety, and feelings of panic and mistrust. She continues to receive treatment from a mental health professional, and, in September 2021, she was again injured in gym class when another student pulled a mat out from under her.

Plaintiff alleges M.K. had a history of bullying C.F. since the fourth grade, when M.K. began bullying "virtually all of the students in her class, including C.F." M.K. moved out of the District for fifth and sixth grade, but returned in seventh grade. Plaintiff alleges that, upon M.K.'s return to the school, M.K. began to limit her attacks to students with known or perceived mental and/or physical disabilities. As an example, Plaintiff alleges that in the Fall of 2020, M.K. bullied another student, A.W., who has spina bifida and requires a teacher's aide, and was C.F.'s close friend.

In the Complaint, Plaintiff raises the following claims: (1) violation C.F.'s substantive due process rights under 42 U.S.C. § 1983 (Count I); (2) a *Monell* claim (Count II); (3) violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; (4) violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"); and (5) a state law claim for willful and wanton conduct (Count V).

Defendants move to dismiss Plaintiff's Complaint in its entirety for a number of reasons. First, Plaintiff's substantive due process claim fails because Defendants did not instigate, create, or increase the bullying. Second, the *Monell* claim must be dismissed because Plaintiff fail to allege a viable constitutional claim. Third, Plaintiff does not plead the requisite elements to succeed under the ADA or Section 504 claims because she does not allege facts demonstrating the bullying was based on C.F.'s disability or that the harassment was sufficiently severe or pervasive that it altered the condition of her education. Finally, Plaintiff's willful and wanton conduct claim is barred by certain sections of the Illinois Tort Immunity Act.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and

4

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## DISCUSSION

As detailed above, Defendants move to dismiss each of Plaintiff's claims. We address each argument in turn.

### I. Official Capacity Claims

At the outset, the Court notes Plaintiff sued the District and the school officials in their official capacities (in addition to their individual capacities). Official capacity suits, however, are simply "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

Accordingly, because the District has also been sued, any official capacity claims are duplicative and are thus dismissed. *See, e.g.*, *Selmani v. Vill. of Bartlett*, 515 F. Supp. 3d 882, 888 (N.D. Ill. 2021).

## II. Constitutional Claims

Section 1983 "provides a remedy for violations of federal rights committed by persons acting under the color of state law." *First Midwest Bank v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021). Thus, a Section 1983 claim requires that a constitutional injury exists. Here, Plaintiff claims Defendants violated C.F.'s substantive due process rights under the Fourteenth Amendment. Plaintiff also pursues theories of liability against the District under *Monell*.

### A. Substantive Due Process Claim

"In contrast with procedural due process, substantive due process bars certain arbitrary, wrongful government actions regardless of the procedures used to implement them." *Doe v. Sch. Dist. U-46*, 2021 WL 3849635, at *4 (N.D. Ill. 2021). The Due Process Clause of the Fourteenth Amendment "is a restraint upon *governmental* action . . . [and] does not impose a duty on the state to protect against injuries inflicted by private actors." *First Midwest Bank*, 988 F.3d at 987 (emphasis in original). Its purpose is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). "The state does not have a due-process duty to protect against acts of private violence." *First Midwest Bank*, 988 F.3d at 987.

Pertinent here, a narrow exception[1] to the rule in *DeShaney* applies when the state created the danger. *See Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (granting Rule 12(b)(6) motion to dismiss claim of state-created danger). Under the state-created danger exception, "a plaintiff must show that the state affirmatively placed him in a position of danger and that the state's failure to protect him from that danger was the proximate cause of his injury." *First Midwest Bank*, 988 F.3d at 988 (citing *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). "Only the most egregious official conduct will satisfy this stringent inquiry." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011). The rule of *DeShaney* cannot be circumvented by broadly interpreting what is meant by "increase" so as to erase the distinction between endangering and failing to protect. *Vill. of Arlington Heights*, 782 F.3d at 917. "Rather, when courts speak of the state's 'increasing' the danger of private violence, they mean the state *did something* that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent violence." *Spruill as next friend of D.N.S. v. Bd. of Educ. of City of Chi.*, 2021 WL 1387949, at *3 (N.D. Ill. 2021) (cleaned up); *see also Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019) (describing the state-created danger exception as applying "when a public official '*affirmatively* places a particular

---

[1] There is also a "special relationship" exception, *see D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015), but Plaintiff does not argue this exception applies.

individual in a position of danger the individual would not otherwise have faced'") (emphasis added). This is key.

Even if the state-created danger exception to *DeShaney* applies, there is no violation of an individual's due process rights unless the state actor's conduct "shocks the conscience." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007). This means that the state actor's conduct must be truly "'egregious'"; "[m]aking a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654-55 (7th Cir. 2011) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)); *see also Estate of Her*, 939 F.3d at 876 ("[C]onscience-shocking conduct . . . requires a culpable state of mind equivalent to deliberate indifference. Elsewhere we've referred to this as a requirement of criminal recklessness.") (citation omitted).

In *Spruill*, a student was sexually assaulted in a school bathroom by another student. 2021 WL 1387949, at *1. The plaintiff alleged he was not the first victim, and many school administrators and the school board were aware of at least one prior assault accusation against the student. *Id*. Despite this awareness, the plaintiff alleged, the defendants failed to take any action to remove the student from the school, to monitor him in order to prevent another attack, or to discipline him for his prior assault(s). *Id*. In his substantive due process claim, the plaintiff claimed the defendants, by failing to discipline or monitor the accused, and by neglecting to ensure school bathrooms were

8

safe, violated the plaintiff's rights by "creat[ing] and/or increas[ing] the risk that [he] would be physically harmed." *Id.* at *2.

The court concluded the plaintiff failed to allege a violation of his due process rights, as the complaint failed to satisfy the first requirement of the state-created danger theory—it did not allege any affirmative acts. Judge Feinerman reasoned, "[t]he complaint's gist, in short, is that school officials knew that a certain student was a predator but stood idly by, thus leading to another attack. That conduct . . . does not rise to the level of a due process violation under Seventh Circuit precedent interpreting *DeShaney*." *Id.* at *3 (cleaned up).

Similarly, in this case, none of Plaintiff's allegations amount to affirmative acts which turned a potential danger into an actual one. Essentially, Plaintiff alleges awareness of M.K.'s bullying and inaction as to measures that might have protected C.F. from further violence by M.K. Generally, for the state created danger exception to apply, the victim must be "safe before the state intervenes and unsafe afterward." *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 911, 917 (7th Cir. 2008); *see also Spruill*, 2021 WL 1387949, at *5.

"[C]ourts have held routinely that a school's failure to prevent student-on-student harassment, assault, and bullying is not a state-created danger." *See, e.g., Brookman v. Reed-Custer Cmty. Unit, Sch. Dist. 255-U*, 2019 WL 4735395, at *7 (N.D. Ill. 2019) (citing *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798–99 (7th Cir. 2015) (finding "inaction or ineffective response to . . . bullying" did not constitute state-created

9

danger); *Doe v. Evergreen Park Elementary Sch. Dist. 124*, 2017 WL 6731867, at *6–7 (N.D. Ill. 2017) (same); *Riverside-Brookfield*, 1995 WL 680749, at *5–6 (N.D. Ill. 1995) (same); *Morgan v. Town of Lexington, Mass.*, 823 F.3d 737, 744 (1st Cir. 2016) ("An alleged failure of the school to be effective in stopping bullying by other students is not action by the state to create or increase the danger."); *Morrow v. Balaski*, 719 F.3d 160, 177–79 (3d Cir. 2013) (holding choice to suspend rather than expel bully did not constitute state-created danger); *Martin v. E. St. Louis Sch. Dist, #189*, 2016 WL 1718332, at *3 (S.D. Ill. 2016) (dismissing due process claim in part because school's failure to apply certain policies did not create or increase the danger that student would be raped).

Plaintiff relies on *Eilenfeldt*, but key facts in that case are distinguishable from the allegations here. *Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*, 30 F. Supp. 3d 780 (C.D. Ill. 2014). In *Eilenfeldt*, the plaintiff alleged not only that the school officials responded inadequately to the plaintiff's bullying, but that the "administrators and teachers facilitated ongoing bullying of [the plaintiff] by . . . actively encouraging bullying[ ] and punishing [the plaintiff] for defending himself while being bullied." *Id.* at 784. In concluding the plaintiff's allegations were sufficient to survive a motion to dismiss, the court explained that he did base his entire substantive due process claim on a failure to protect from third parties, but also alleged "the participation of school employees in [his] bullying." *Id.* at 790. As noted above, here, unlike in *Eilenfeldt*, Plaintiff does not allege that Defendants participated in the bullying in any way—much

10

less that they "actively encourag[ed]" the assaults or punished the C.F. for reporting the bullying. *Id.* at 784. *Eilenfeldt* is thus unpersuasive here.

Plaintiff also relies on *Fonza v. Chicago Public School District #299*, 2018 WL 337811 (N.D. Ill. 2018), in support of her state-created danger theory, because "Defendants failed to provide [C.F.] with medical attention and chose instead to leave C.F. unattended in a hallway without adult supervision to fend for herself" after she was injured. But the Complaint alleges a teacher did assist C.F. clean herself up. The school notified C.F.'s parent and showed C.F.'s injuries over video chat. Plaintiff has not alleged that the 45 minutes C.F. waited in the hallway for her parent to arrive at the school increased or exacerbated C.F.'s injuries. *Fonza* does not help Plaintiff's case.

As the Court has previously recognized, "the line between action and inaction is not always easily drawn." *Doe A v. Plainfield Cmty. Consol. Sch. Dist. 202*, 2022 WL 170047, at *5 (N.D. Ill. 2022) (Kocoras, J.). But here, Plaintiff's Complaint focuses on Defendants' inaction (i.e., failure to intervene in the bullying, failure to follow District policies, failure to supervise students). Again, failing to prevent the harm is simply not the same as creating or increasing the risk of harm, which is a fundamental requirement for this type of substantive due process claim. *See Henderson v. Dekalb Cmty. Unit Sch. Dist. 428*, 2021 WL 2681911, at *4 (N.D. Ill. 2021). Even drawing all reasonable inferences as Plaintiff's favor, the state-created danger exception does not apply here. Count I is dismissed, without prejudice.

### B. *Monell* Claim

A municipal entity cannot be found liable under *Monell* where there is no underlying constitutional violation by a municipal employee. *D.S.*, 799 F.3d at 800. Because Plaintiff has not shown a violation of C.F.'s constitutional rights under the Due Process clause of the Fourteenth Amendment as set forth above, the institutional defendants cannot be held liable under *Monell*. *See id*. Count II is dismissed, without prejudice.

### III. ADA and Rehabilitation Act Claims

Moving on, Plaintiff also brings two claims against the District and Board under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and Title II of the ADA, 42 U.S.C. § 12132. Both statutes generally prohibit discrimination in public programs on the basis of disability. *H.P. by & through W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018). Specifically, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act likewise bans disability discrimination by public entities but does not allow mixed-motive claims (whereas the ADA does). *See* 29 U.S.C. § 794(a) (banning discrimination "*solely* by reason of" the person's disability) (emphasis added); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019). That said, because "Title II of the ADA was modeled after [Section]

504 of the Rehabilitation Act[,]" and because "the elements of claims under the two provisions are nearly identical," the Seventh Circuit has held "that the standards applicable to one act are applicable to the other." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 845 n.6 (7th Cir. 1999).

To state a claim against the District for peer-to-peer disability-based harassment under Section 504 and the ADA, Plaintiff must allege that (1) C.F. has a disability, (2) C.F. was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of C.F.'s education and created an abusive educational environment, (4) Defendants knew of the harassment, and (5) Defendants were deliberately indifferent to the harassment. *See Doe v. Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *5 (N.D. Ill. 2020); *Werth v. Bd. of Dirs. of Pub. Schs.*, 472 F. Supp. 2d 1113, 1116 (E.D. Wis. 2007)).

In their motion, Defendants do not dispute that Plaintiff has adequately pleaded facts showing that C.F. has a disability (ADHD) and that Defendants knew about the bullying she suffered and were deliberately indifferent to it. Instead, Defendants argue only that Plaintiff failed to allege facts that show the harassment was based on C.F.'s disability or sufficiently severe or pervasive that it altered the condition of her education and created an abusive educational environment.

Plaintiff claims that her allegations that M.K. targeted those with disabilities and subjected those students—including C.F.—to bullying behavior, sufficiently allege a causal connection between the harassment and C.F.'s status as a disabled student. The

13

Court disagrees. To start, Plaintiff has not alleged that M.K. even knew of C.F.'s disability. Although the Complaint is replete with allegations that M.K. also bullied C.F.'s friend, A.W., who has spina bifida, the mere conclusory allegation that M.K. targeted A.W. because of her disability does not mean she also targeted C.F. because of C.F.'s disability. The bullying C.F. endured included M.K. violently pulling on C.F.'s ponytail, striking her during gym class, and repeatedly calling C.F. a "bi**h", a "wh**e", and "as****e". None of these derogatory comments or harassing behaviors plausibly suggest that C.F.'s disability was the reason for the harassment. "Simply because a disabled person was bullied does not, without more, compel the conclusion that the bullying was based on [C.F.'s] disability." *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 232 (E.D.N.Y. 2015) (cleaned up).

Additionally, the Complaint alleges that M.K. began bullying "virtually all of the students in her class, including C.F." in the fourth grade, two years before C.F. was placed on a 504 plan. This suggests M.K.'s subsequent bullying of C.F. in the seventh grade could easily have been based on some reason other than C.F.'s disability, such as personal animus, or merely because of her close association with A.W. *See Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 196 (D. Conn. 2016) ("Doe does not sufficiently allege, however, that anyone actually harassed, bullied, or assaulted him *because of* his disability or perceived disability, rather than some other reason, such as personal animus."). While the bullying described in the Complaint is troubling, Plaintiff has alleged no non-conclusory facts connecting the alleged bullying to C.F.'s

14

disability. Without factual allegations to support the alleged disability discrimination, dismissal of Plaintiff's claims under the ADA and Section 504 is required. *See Eskenazi-McGibney*, 84 F. Supp. 3d at 233 ("[E]ven if students with disabilities are more likely to be bullied than students without disabilities . . . a plaintiff nevertheless does not state a claim under the ADA and Section 504 absent some factual allegation linking the disability and the bullying. To hold otherwise would convert the ADA and Rehabilitation Act into generalized anti-bulling statutes."). Counts III and IV of Plaintiff's Complaint are dismissed, without prejudice.

### IV. State Law Claim

Because the Court grants Defendants' motion to dismiss Plaintiff's federal claims, the Court does not have subject matter jurisdiction, and thus declines to exercise its supplemental jurisdiction over Plaintiff's state law claim. 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss [23] and dismisses Plaintiff's Complaint in its entirety, without prejudice.

Dated: May 17, 2022

                                                       Charles P. Kocoras
                                                      United States District Judge